IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NANCY L. MARQUARDT,

Plaintiff,

v.

DENIS R. MCDONOUGH,

Defendant.

OPINION AND ORDER

21-cv-393-wmc

---

Plaintiff Nancy L. Marquardt has been representing herself and was granted leave to proceed on claims under the Age Discrimination in Employment Act ("ADEA") and Rehabilitation Act against defendant Denis R. McDonough, the Secretary of the Department of Veterans Affairs ("VA"). Specifically, Marquardt claims that as a registered nurse at the VA's Clement J. Zablocki Medical Center ("VAMC"), she was subjected to discrimination and a hostile work environment in violation of the ADEA, as well as to discrimination based on her "history of cancer and new knee injuries" in violation of the Rehabilitation Act. (Dkt. #8.) Before the court is defendant's motion for summary judgment on all of Marquardt's claims. (Dkt. #48.) For the reasons explained below, that motion will be granted.

UNDISPUTED FACTS[1]

**A. Background**

In November 2017, plaintiff Nancy Marquardt was hired to be a registered nurse ("RN") in the Spinal Cord Injury division ("SCI") at VAMC and began working on March 4, 2018, subject to a standard two-year probationary period. This probationary period included Marquardt and other new nurses completing a roughly 90-day orientation process, which in Marquardt's case began with completing a two-week "Nursing Service and New Employee" training, required for all new nurses, then SCI's own, unit-specific orientation. The latter training began with a tour of the SCI unit and shadowing its nursing assistants (NAs), licensed practical nurses (LPNs), and RNs. In the final stage of SCI's orientation, new nurses also worked alongside preceptors (experienced nurses responsible for the training of new nurses) and provided patient care under their supervision. To complete their orientation, new nurses needed to demonstrate the ability to independently provide care for three or four SCI patients.

**B. Marquardt's Reported Performance During Her Orientation Process**

Nurse Donna Johnson was responsible for Marquardt's "onboarding," including overseeing her orientation. After Marquardt completed her initial orientation phases,

[1] Unless otherwise stated, the facts in this section are drawn from defendant's proposed findings of fact. (Dkt. #50.) As defendant notes, plaintiff has failed to dispute the defendant's proposed findings of fact or provide any supplemental findings of fact. Instead, plaintiff attempts to incorporate a blanket dispute of the facts proposed by the defendant in her response brief. (Dkt. # 65, at 1.) Generally, this court accepts a party's proposed findings of fact as undisputed when the opposing party fails to file any response. *See Abraham v. Washington Grp. Int'l, Inc.,* No. 12-CV-198-BBC, 2013 WL 12099114, at *1 (W.D. Wis. Mar. 26, 2013), aff'd, 766 F.3d 735 (7th Cir. 2014) (accepting all of defendants' "properly proposed" findings of fact as true when plaintiff did not file a response to, or his own, findings of fact). However, understanding that plaintiff is pro se, this court will flag and address any disputes to material facts raised by plaintiff.

Johnson further assigned Nurse Martha Pontel to be her "preceptor." Nurse Pontel served as Marquardt's primary and secondary preceptor from April to June. While supervising Marquardt, Pontel expressed significant concerns about Marquardt's ability to provide patient care, specifically noting that Marquardt:

- charted her wound care incorrectly;
- failed to identify that a patient's oxygen tank was empty and had to ask another nurse for "his expertise";
- was seemingly "unaware of how to take care of a patient with a trach and vent[ilator]";
- was "unable to complete tasks in appropriate time";
- removed an aspen collar without seeking assistance or being supervised, despite requests that she do so;
- used an incorrect procedure to flush a PICC line;
- used an incorrect angle for a patient with a running feeding tube;
- used an "outdated IV fluid on an IV pole"; and
- failed to set up a call light within a patient's reach.

(Dkt. #57.)

Marquardt disputes the truthfulness of these noted deficiencies. (Dkt. #65, at 5.) Based on these expressed concerns, however, there is no dispute that Johnson, Tammy Soukup (a program manager for the SCI unit), and Roxanne Cliff (the Associate Division Manager) collectively assigned Marquardt a second preceptor -- nurse Katie Berndsen -- with the hope that she may be able to assist Marquardt to complete orientation timely, which was still expected to occur by June 6.

Nurse Berndsen started serving as Marquardt's preceptor in May. Unfortunately,

she also expressed and reported several concerns regarding Marquardt's ability to perform patient care. Specifically, Nurse Berndsen noted that Marquardt:

- had trouble and asked questions regarding proper medication procedures for a patient and potential for double dosing that medication;
- failed to retain information;
- was "opt[ing] to go to break instead of doing wound treatments, looking at orders, charting, or ensuring that [the] vets were be washed up";
- was not "showing initiative" with respect to actions ordered by the vet to be taken, prompting Berndsen to "mention it to her again";
- started bowel prep with "no padding or protection underneath [the] patient";
- went to lunch without informing Berndsen or the team lead;
- left other staff to perform "99% of cares and suction" for a patient;
- failed to observe that a patient's oxygen was "turned off"; and
- left a patient unattended with his food, despite an order to make sure the patient "[was] supervised" when eating.

(Dkt. #58.)

Although plaintiff also claims these remarks were unfounded (dkt. #65, at 5), there is no dispute that Berndsen's concerns were relayed to SCI's Program Manager Soukup, who in turn shared them with VAMC's Human Resources Specialist Maximillian Blawat and Manager Cliff. In response, Soukup and Cliff then extended Marquardt's orientation period for three more weeks through June 28. Additionally, Soukup and Cliff issued a counseling report, informing Marquardt of their concerns and that failing to complete orientation timely "may result in a summary review of [her] employment during the probationary period by the Professional Standards Board (PSB)," which could lead to her

discharge. (Dkt. #52-3, at 3.)

At this time, Marquardt was assigned a third preceptor -- Nurse Anna Fairhart – and both began having daily briefing with Nurse Johnson to discuss how each shift went. Unfortunately, Fairhart also expressed concerns about Marquardt's ability to provide patient care, noting that she:

- needed "frequent verbal cueing to establish the plan of care for the day and completion of tasks";
- "stayed late to chart";
- had trouble recalling information Fairhart and she had recently discussed;
- was "unfamiliar with a medication" and needed a verbal cue to look it up;
- needed "education" on the use of an Alaris pump and Dakine solution and its use in wound care, despite using the pump with previous preceptors;
- needed "specific direction and verbal cuing" for a patient's changing medical condition;
- failed to identify the trochanter correctly versus the buttock for proper wound care;
- was unfamiliar with a declining patient's code status despite discussing it with Fairhart earlier that morning;
- "was missing from the floor and unreachable on one occasion" because she failed to answer her phone;
- "missed a medication pass and left for the day without notifying anyone that medications had not been administered"; and
- "[s]truggl[ed] to succinctly communicate with ancillary department."

(Dkt. #56-3, at 1-2; dkt. # 59, at 3.) Although Fairhart's concerns were noted in the summary of her orientation, Marquardt asserts that these deficiencies were falsely reported as well. (Dkt. #65, at 5.)

Even after Fairhart, Marquardt was assigned a fourth preceptor -- Nurse Doreen Serrano -- who noted additional deficiencies, including that Marquardt:

- left a newly admitted patient for 30 minutes without going in for an initial safety check;
- left the "call light outside of [patients'] reach";
- refused to assist a CNA with turning a patient;
- did not know the proper procedure under Elsevier for administering two medications through a feeding tube and became "very argumentative and defensive" about it;
- left the floor for lunch without notifying Serrano and did not answer her phone when Serrano called to find her;
- "seem[ed] to have difficulty [with] carry over of information;" and
- gave blood pressure medication to a patient, even though a "CNA reported to Nancy that he was unable to get [a] BP (blood pressure)."

(Dkt. # 56-3, at 18, 20, 22, 25, 26; dkt. # 56-4, at 2.) As with the earlier deficiencies noted by her other preceptors, Marquardt again disputes Nurse Serrano's criticisms. (Dkt. #65, at 5.)

After reviewing all of these concerns, Nurse Johnson informed Program Manager Soukup that she was not comfortable having Marquardt provide patient care. On July 6, Soukup then sent Marquardt an email, informing her that as of July 9, she would not "be assigned any patient care on the [SCI] unit." (Dkt. #61-14, at 1.) Instead, Marquardt was assigned administrative duties, including preparing orientation packets; organizing storage rooms; taping off areas for medical equipment; and on one occasion, cleaning commode chairs. Additionally, Marquardt was relocated to an office with a window to the outside and a door with a glass transom beside it looking into the hallway, albeit just fifteen

to twenty feet from Johnson's desk.

### C. NPSB Review

In addition to being removed from patient care, Program Manager Soukup and Associate Division Manager Cliff, in consultation with HR, requested that the Nurse Professional Standards Board (NPSB) conduct a review hearing of Marquardt for possible termination. In preparation for that hearing, an evidence file containing documentation of Marquardt's reported patient care issues was provided to the NPSB. On September 11, another SCI Program Manager, Daniel Rosin, provided Marquardt with written notice of the NPSB's upcoming review, identifying: what deficiencies would be reviewed; her September 19 deadline to submit a written response; and the September 27 hearing date.

On September 27, the NPSB held its review hearing conducted by a panel of three nurses who worked outside of the SCI unit. Afterward, the NPSB's three nurse panel concluded that Marquardt should be terminated, and they prepared a report documenting their findings based on a review of: "Marquardt's written statement and interview; the interview of Donna Johnson, RN, Nurse Educator; formal reports of inability to recall relevant Veteran information necessary to provide skilled care; failure to carry out ordered treatments and care delivery without assistance by other staff members; failure to follow policies and procedures; and inability to successfully complete the orientation period and function independently as a Registered Nurse on the Spinal Cord Injury Unit." *(Id.)*

As a board, NPSB also signed off on the panel's findings on October 9. In its findings, the NPSB emphasized that Marquardt was "unable to provide insight to the incidents that were discussed, including BCMA [Bar Code Medication Administration]

errors which required following the policies and procedures regarding running missed medication reports, [and] not mixing medications when administering via a feeding tube." (*Id*.) The board's ultimate conclusion to terminate Marquardt was not based on a single deficiency, but rather on the totality of her deficiencies during the entire orientation period. After termination had been recommended, Marquardt received a notice of termination on October 10, which became effective on October 19.

**D. Marquardt's Worker's Compensation Claim**

While performing administrative tasks during the pendency of her NPSB review, Marquardt allegedly began to experience pain and swelling in her knees. In response, on September 12, 2018, Marquardt sent an email to SCI's Program Manager Rosin, discussing the possibility of completing a worker's compensation claim. The next day, Rosin informed Marquardt that a claim could be completed that Friday. (Dkt. #61-12, at 1.) After a worker's compensation form was still not completed some two weeks later, Marquardt emailed Rosin again regarding her claim on September 27. (Dkt. #61-16, at 1.) That day, Rosin completed and signed the form. (Dkt. #61-15, at 2.)

Also on September 27, the same day as her scheduled NPSB review, Marquardt filed a claim of "harassment/hostile work environment" on the a basis of "age" with the Office of Resolution Management ("ORM"). (Dkt. 61-4, at 1.) One week later, on October 4, ORM employee Mary Harris sent a letter to Marquardt (1) to advise that she would be serving as her Equal Employment Opportunity ("EEO") counselor for any age-based harassment and hostile work environment claims; and (2) to emphasize that Harris should be contacted "[i]f this information is incorrect." (*Id.*) On October 8, Marquardt

signed this same letter acknowledging her rights and responsibilities, including the fact that she "must initiate contact with an EEO counselor within 45 calendar days of the date of the matter alleged to be discriminatory." (*Id*. at 2.)

On January 21, 2019, Marquardt was emailed a Notice of Right to File a Discrimination Complaint, which advised that her complaint "must be limited to the claim(s) [she] discussed with the counselor." (Dkt. #61-6, at 1.) On February 4, Marquardt proceeded to file an employment discrimination complaint, claiming that she was: (1) harassed and terminated on the basis of age; and (2) discriminated against on the basis of disability. Because Marquardt had not previously alleged any disability discrimination claim, Harris highlighted in her counselor report that Marquardt "did not mention a basis of Disability, only Age." (Dkt. #61-5, at 2.) On March 18, the ORM emailed Marquardt that while her claim of "hostile work environment based on age" had been accepted for an investigation, her disability claim had not. (Dkt. #61-9, at 1.) The ORM also notified Marquardt that she must notify them if her accepted claim was "improperly formulated, incomplete, or incorrect," which she did not do. (*Id*. at 2.)

## OPINION

Defendant moves for summary judgment on all of plaintiff's claims. As for her ADEA claims, defendant argues that undisputed facts establish that: she repeatedly failed to meet legitimate expectations during her probationary period; no similarly situated individual was treated more favorably; and any resulting adverse action was not caused by her age. As for plaintiff's RA claims, defendant argues that plaintiff failed to exhaust available administrative remedies, and in the alternative, she again failed to advance

evidence sufficient for a reasonable trier of fact to find that: she met legitimate expectations on the job; a similarly situated individual was treated more favorably; the VA was even aware of her history of cancer or new knee injuries; and any adverse action was caused by her cancer history or knee injury.

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Irrelevant and unnecessary factual disputes that do not affect the outcome of the suit do not preclude summary judgment. *United States v. McGaughey*, 977 F.2d 1067, 1073 (7th Cir. 1992). "The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists." *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). Once that showing has been made, however, "the burden shifts to the party opposing summary judgment to present specific facts demonstrating a genuine issue for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

When evaluating a motion for summary judgment, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). When reviewing motions for summary judgment, courts "may not weigh conflicting evidence or make credibility determinations." *Whitaker v. Dempsey*, 144 F.4th 908, 917 (7th Cir. 2025). Courts may consider only admissible evidence. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Mere "speculation or

conjecture" is insufficient. *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025).

Generally, pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the fact that plaintiff is representing herself does not eliminate "the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact." *See Sierra-Lopez v. Steingraeber*, No. 22-cv-502-wmc, 2025 WL 1744981, at *5 (W.D. Wis. June 24, 2025). Additionally, on a motion for summary judgment, pro se plaintiffs are still only entitled to "favorable inferences that are supported by admissible evidence, not those based upon mere 'speculation or conjecture.'" *Id.* (citing *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). Here, plaintiff's single-spaced, rambling narrative of related and unrelated general challenges to factual assertions without contradictory evidence (dkt. #65), broad legal assertions, and matters both within and outside her personal knowledge, all wholly failed to create material disputes of fact necessary for her to proceed past summary judgment.

## I. Plaintiff's ADEA Claims

### A. Termination

Under the ADEA, it is unlawful for employers to discriminate against an employee "because of such individual's age." 29 U.S.C. § 623(a). To succeed on an ADEA discrimination claim, a plaintiff must show that age was the "but for" cause of any adverse employment action. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 960 (7th

Cir. 2021). A plaintiff may do so by providing evidence "that 'points directly' to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (quoting *Burks v. Wisconsin Dep't of Tranp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006)).

In cases like this one, where plaintiff has not offered direct evidence of age discrimination, plaintiffs may still prove discrimination using the "indirect" burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Glaus v. Speedway Superamerica, LLC*, 5 F. Supp. 3d 1008, 1017 (W.D. Wis. 2014). Under this framework, a plaintiff must make a prima facie case of discrimination, requiring a showing that: "(1) she is a member of the protected class (people over forty years of age), '(2) she performed her job to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment.'" *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 469 (7th Cir. 2025) (quoting *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022)). Once this showing has been made, the defendant then has the burden "to offer a legitimate, non-discriminatory reason for the adverse action." *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002). If such a showing has been made, the burden then shifts back to the plaintiff to "demonstrate that the defendants' proffered reason is pretextual." *Id.*[2]

[2] The Seventh Circuit has moved away from applying the *McDonnell Douglas* burden-shifting approach, but the result does not change if the court considers what a reasonable jury could find based on the evidence as a whole, even when viewed in a light most favorable to plaintiff. *See Pratt v. Wisconsin Aluminum Foundry*, 183 F.4th 541, 551-52 (7th Cir. 2026) (analyzing causation in plaintiff's Title VII claim by analyzing the totality of the evidence, despite plaintiff setting out arguments in the framework of *McDonnell Douglas*).

Here, plaintiff claims that she was subjected to an adverse employment action due to her age -- termination. However, because no reasonable juror could conclude that plaintiff was meeting her employer's legitimate expectations, or that similarly situated employees were treated more favorably, plaintiff has not made a prima facie case, and her ADEA claims must be dismissed. As to her employer's legitimate expectations, the record illustrates that all of plaintiff's preceptors had concerns regarding her ability to provide patient care. These struggles were well documented and ranged across the full spectrum of nursing competencies, including administering medications, managing her time, thinking critically, and communicating with coworkers.

Although plaintiff disputes the truthfulness and accuracy of her preceptors' reports, (dkt. # 65, at 5), she only offers conclusory allegations, which are insufficient for purposes of summary judgment. *See Igasaki*, 988 F.3d at 958 (a prima facie case of discrimination has not been made when poor performance reviews were only disputed with conclusory assertions regarding the truthfulness of the reviews.)

Moreover, regardless of plaintiff's general criticisms of the credentials of her preceptors, fairness of their observations as to her performance or attributive motives, she offers no reasons for the NPSB, VA's ultimate decisionmaker, to question the preceptors' reports in deciding to terminate plaintiff. Accordingly, no reasonable jury could conclude that she was meeting the expectations of her employer, much less that her age was a factor in the decision to terminate her. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843-44 (7th Cir. 1996) (affirming the grant of summary judgment on an ADEA discrimination claim because ample evidence of plaintiff's poor performance, challenged

only by conclusory statements, demonstrated that plaintiff was not meeting her employer's legitimate expectations).

Additionally, plaintiff fails to present any evidence that a similarly situated individual received more favorable treatment. "While similarly situated parties need not be 'identical in every conceivable way,' they 'must be directly comparable to the plaintiff in all material respects.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 719 (7th Cir. 2021) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). "When a plaintiff complains of disparate discipline, the similarly situated inquiry hinges on whether co-workers 'engaged in comparable rule or policy violations' and received more lenient discipline." *Glaus LLC*, 5 F. Supp. 3d at 1021 (quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010)).

Plaintiff again offers conclusory, general remarks that younger nurses completing orientation: "received a better orientation"; "were sent to training classes and provided ample time to timely complete their mandatory online training"; "were allowed to test out of their medication administration requirements sooner"; "had frequent individual meetings with the full-time nursing educator on the unit;" and ultimately, did not need to "defend their nursing practice at a Nurse Professional Standards Board." (Dkt. #65, at 5, 10.) However, plaintiff offers no evidence to demonstrate that the younger nurses were similarly situated in material aspects. If anything, plaintiff suggests that she was *not* similarly situated to newer nurses because they were "less experienced" and "had less acute patients to care for during their orientation." (*Id*. at 10.) Perhaps most critically, plaintiff

has not shown that any younger nurses' preceptors raised concerns as to their ability or inclination to provide basic patient care.

Because plaintiff has failed to identify a similarly situated employee, for this reason too, she has failed to make a prima facie case of discrimination. *See Franzoni*, 300 F.3d at 772 ("[Plaintiff], however, has failed to set forth any evidence of similarly situated people not in his protected class and therefore has failed to establish a prima facie case of age discrimination."). Because plaintiff has failed to state a prima facie case of discrimination, no reasonable juror could conclude that plaintiff was terminated because of her age, and defendant is entitled to summary judgment on this claim.

### B. Hostile Work Environment

Defendant is also entitled to summary judgment on plaintiff's hostile work environment claim. In order to succeed on this claim under the ADEA, a plaintiff must show "'(1) she was subject to unwelcome harassment; (2) the harassment was based on her [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability.'" *Tyburski v. City of Chicago*, 964 F.3d 590, 601 (7th Cir. 2020) (quoting *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005)).

Plaintiff argues that a hostile work environment existed based on assertions that in the final months of her employment: SCI Program Manager Soukup subjected her to "repeated yelling"; she was relocated to an office in which she could not leave save for bathroom breaks, had no privacy, and could not eat or use her phone; her workers compensation filing was delayed; and she was required to provide documentation of her

leave time. (Dkt. #65, at 3, 11.) However, plaintiff fails to provide evidence (or even make reference) of that behavior being caused by her age. Instead, plaintiff merely suggests that this "harassment" was discriminatory or hostile because it was "unwarranted." (*Id.*) Additionally, the only evidence that plaintiff provided to suggest that the harassment occurred -- an email from a former coworker -- also fails to suggest that any harassment by Soukup was because of plaintiff's age, as required under the ADEA.

Because plaintiff failed to provide evidence from which a reasonable trier of fact could find that the alleged harassment was due to her age, any hostile work environment claim under the ADEA fails, and defendant is entitled to summary judgment as a matter of law. *See Hambrick v. Kijakazi*, 79 F.4th 835, 844 (7th Cir. 2023) (plaintiff could not succeed on a hostile work environment claim under the ADEA or Title VII because she "failed to show she suffered severe or pervasive harassing workplace conduct *on account of her race or age*") (emphasis added); *see also Blumenshine v. Bloomington Sch. Dist. No. 87*, 150 F.4th 882, 887 (7th Cir. 2025) (plaintiff's hostile work environment claim under the ADEA fails because "[t]he only evidence connecting the complained-of conduct to age-based animus is [plaintiff's] own belief.").

**II. Plaintiff's Rehabilitation Act Claim**

In addition to allegations of age discrimination, plaintiff claims she was discriminated against because of her history of cancer and a new knee injury. (Dkt. #65, at 11.) Plaintiff claims she faced discrimination on the basis of these conditions because she was required to "explain reasons for [her] appointments" and "present evidence of completing [her] appointments as well as the start and end times of [her] appointments,"

all of which plaintiff contends was inconsistent with VAMC policy. (*Id.*) Plaintiff also states that she was discriminated against because of her knee injury when the VAMC tried to "deny" her worker's compensation claim and her attempts to seek treatment. (*Id.*)

**A. Exhaustion**

As a threshold issue, plaintiff failed to raise a claim of disability discrimination to her EEO counselor. As a result, her RA claim is barred for failing to exhaust her available administrative remedies. *See Shiba v. Mullin*, 174 F.4th 1025, 1033 (7th Cir. 2026) (federal employees are required to "exhaust administrative remedies before filing suit for violation of the Rehabilitation Act"). Proper exhaustion requires "[a]n aggrieved person [to] initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to follow this 45 day requirement bars a plaintiff's claims. *See Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) ("we bar claims if the 45-day requirement is not satisfied and there is no occasion for equitable tolling.") Additionally, plaintiffs seeking relief under the Rehabilitation Act "cannot bring claims in the lawsuit not in the original EEOC charge." *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022) (citing *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). The rationale for this requirement is to both "promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).

Although exhaustion is required for federal employees, there is an exception for unexhausted claims that are "'reasonably related to the allegations of the [EEOC] charge

and growing out of such allegations.'" *Id*. (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc*., 538 F.2d 164, 167 (7th Cir. 1976)). "This standard is a liberal one and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id*. at 692 (internal citation omitted). However, to be reasonably related to the allegations in the EEOC charge, the claims "'must, at minimum, describe the same conduct and implicate the same individuals.'" *Chaidez v. Ford Motor Co*., 937 F.3d 998, 1004 (7th Cir. 2019) (quoting *Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 501 (7th Cir. 1994)).

Here, plaintiff failed to notify her EEO counselor of disability discrimination until after the 45-day window expired. In plaintiff's initial filing in September 2018, the reported basis for her claim was "age" (Dkt. #61-4, at 1), and in Harris' response, "age" is the only identified basis (dkt. #61-5, at 1). Not until plaintiff filed her discrimination complaint on February 4, 2019, did she complained about discrimination based on her disabilities, stating that she faced such discrimination during the period of "9/2018." (Dkt. #61-8, at 1.) Indeed, this addition prompted Harris to note for the first time in her Counselor Report that: plaintiff "did not mention a basis of Disability, only Age"; and "[t]his Counselor did not learn of [plaintiff's] Disability claim until 2/4/2019, when [plaintiff] filed her formal complaint." (Dkt. #61-5, at 2.) Because plaintiff's claim of disability discrimination was not part of her claim as initially reported, *and* because defendant was not notified of any alleged disability discrimination until February 2019 -- by then, well after the 45-day deadline had expired for conduct alleged to have occurred in

"9/2018" -- plaintiff failed to exhaust her administrative remedies for her RA disability discrimination claims.

Additionally, no reasonable juror could find that plaintiff's disability discrimination claim is reasonably related to her age discrimination claim. To begin, these claims generally do not involve the same conduct, meaning they fail to establish the minimum level of similarity permissible for an unexhausted claim to proceed. More specifically, plaintiff's age discrimination claim turns on the allegation that younger nurses received more favorable treatment with respect to the nurse orientation process; and plaintiff's hostile work environment claim primarily turns on asserted harassment and yelling by Program Manager Soukup while ordering plaintiff to "sit alone inside an exposed room for three months" without being able to leave or talk to her coworkers and patients. (Dkt. #7, at 10.) On the other hand, plaintiff's complaint of disability discrimination discusses seemingly unrelated assertions of delay and attempts to deny her worker's compensation claim for a new knee injury.

Although plaintiff asserts that Soukup was involved in both, the discussion of the worker's compensation claim relates specifically to an alleged disability (her knee injuries), but is not discussed or referenced in relation, or otherwise connected, to plaintiff's age discrimination claim. (*Id*. at 2.) Because plaintiff's claims involve discrimination based on an unrelated matter and dissimilar conduct, no reasonable jury could conclude that her disability and age discrimination claims are reasonably related to this unexhausted disability discrimination claim. Therefore, defendant is entitled to summary judgment on

this claim as well.[3]

### B. Disability Discrimination

Even if plaintiff had properly exhausted her disability discrimination claim, no reasonable jury could find on this record that she had been discriminated against solely on that basis. In order to establish disparate treatment under the Rehabilitation Act, a plaintiff is required to demonstrate that "(1) [she] is disabled, (2) [she] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) [she] suffered an adverse job action 'solely by reason of ...[her] disability.'" *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022) (citing 29 U.S.C. § 794(a)). Moreover, because a plaintiff's disability must be the *sole* cause of an adverse job action, RA claims will fail even when a disability serves as *a* factor in an adverse employment action. *See Lewis v. Indiana Dep't of Transportation*, 173 F.4th 876, 883 (7th Cir. 2026) ("As the Fifth Circuit nicely summarized, 'under the Rehabilitation Act, an employer is liable only if the discrimination occurred solely by reason of her or his disability, not when it is simply a motivating factor.'") (quoting *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 586 (5th Cir. 2021)); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) ("[E]ven if the reason is the consequence of the disability—there

---

[3] In her response, plaintiff represents that she "had no work accommodations made to accommodate [her] knee pain and mobility restrictions." (Dkt. #65, at 11.) However, "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). Because a failure to accommodate claim is legally distinct and was not raised until her response brief was filed, any last-minute attempt to fashion such a claim under the Rehabilitation Act would also not be properly exhausted and is, therefore, barred from consideration. Additionally, even if a failure to accommodate claim had been properly exhausted, plaintiff was not granted leave to proceed on any claim of failure to accommodate.

has been no violation of the Rehabilitation Act.") (internal quotations omitted).

With respect to her termination from the VAMC in particular, plaintiff has offered no evidence to support a finding that she was terminated based on her history with cancer or her new knee injuries, let alone that these conditions were the *sole* cause of her termination. Instead, as discussed above, there were ample, albeit subjective concerns expressed by all of her nurse preceptors to compel a finding that she was underperforming as a nurse in her orientation period and that the NPSB reasonably relied on those comments at least in part when ultimately recommending plaintiff's termination. Again, although plaintiff disputes the accuracy of such concerns and deficiencies, her conclusory objections are insufficient to create a genuine factual dispute as to the NPSB's reasons for termination. Indeed, even if some or all of the preceptors' recurring criticisms were inaccurate, plaintiff has adduced *no* evidence to dispute that NPSB had a reasonable basis to rely on them.

With no evidence to dispute that plaintiff's poor performance was *a factor* in her termination, therefore, no reasoanble jury could conclude that plaintiff's disability was the *sole* cause of her termination. Accordingly, defendant is entitled to summary judgment on this claim. *See Royan v. Chicago State Univ*., 145 F.4th 681, 694 (7th Cir. 2025) ("[Plaintiff] received evaluations that consistently cited deficiencies in key areas such as attendance, professionalism, clinical reasoning, and patient care. These are not marginal issues; they are core competencies essential to pharmacy practice. The university is entitled to enforce those standards, particularly in fields such as this, where failure to meet training standards

can endanger future patients. At bottom, [plaintiff's] theory rests on conjecture. But conjecture, without supporting evidence, is not enough to defeat summary judgment.").

Plaintiff next claims that she experienced disability discrimination based on her history of cancer and new knee injuries by being "required to provide evidence of the reasons for [her] health/dental care appointments plus formal evidence of the start and end times of every appointment that [she] attended," which she contends was not required by hospital policy. (Dkt. #65, at 11.) Despite plaintiff's contention, defendant cites to VA policy that expressly requires documentation "verif[ying] the need for the employee's absence" when "a full day of sick leave is requested in connection with a medical, dental, or optical appointment." (Dkt. #52-2, at 5.) Additionally, plaintiff argues that she was threatened with being "coded" for unauthorized absences when she had appointments (dkt. #65, at 11), but VA policy permits a designation of AWOL (absence without leave) upon a "[f]ailure to comply with the requirement to provide a medical statement." (Dkt. #52-2, at 14.) Plaintiff neither offers evidence to rebut these policies nor to find that these policies were inappropriately or exclusively enforced against her alone. Because no reasonable jury could infer defendant's requirement that plaintiff comply with its standard policy was an act of discrimination based on her disability, defendant is further entitled to summary judgment on this claim.

Finally, plaintiff claims that disability discrimination caused her employer to try "to delay and [then to] deny the filing" of her worker's compensation claim for her new knee injury. (Dkt. #65, at 10.) Plaintiff first discussed completing a worker's compensation claim in an email to SCI Program Manager Rosin on September 12, 2018. The next day,

however, there is no dispute that Rosin informed plaintiff that a claim could be completed that Friday. (Dkt. #61-12, at 1.) And while on September 27, plaintiff emailed Rosin again, asking whether her "CA-1" form can be completed, that same day, Rosin completed and signed the form (Dkt. #61-16, at 1; dkt. #61-15, at 2.) Although plaintiff claims that this brief delay was discriminatory and that her supervisors "refused" to sign her workers compensation form because of a disability (dkt. #7, at 10), she, again, offers no evidence to support those assertions. Rather, she relies solely on her belief that her employers were trying to deny her claim and prevent her from seeking appropriate treatment for her knee. However, "'subjective beliefs of the plaintiff...are insufficient to create a genuine issue of material fact," *Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 574 (7th Cir. 1998) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989)), Regardless, it is undisputed that plaintiff's compensation claim *was filed*. For these reason, no reasonable jury could conclude that any delay in the filing of plaintiff's worker's compensation claim was done solely because of her disability. Thus, defendant is entitled to summary judgment as a matter of law on plaintiff's claim of disability discrimination under the Rehabilitation Act.

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. # 48) is GRANTED.

2) The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 30th day of September, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge